**Tara Herivel,** OSB #070418
Tara@heriveldefense.com
Law Firm of Tara Herivel, LLC
333 S.W. Taylor Street, Suite 300
Portland, Oregon 97204
Tel: (503) 893-5525
Attorney for plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**FORGE D. MILEHAM JR.,**

Plaintiff,

v.

**OREGON DEPARTMENT OF CORRECTIONS**, an agency of the State of Oregon; **MICHAEL REESE**, **COLLETTE PETERS**, **JOE BUGHER**, **JOSHUA HIGHBERGER**, **BRANDON KELLY,** **COREY FHUERE**, **JAMIE BREYMAN**, **WARREN ROBERTS**, **ERICKA SAGE,** **THOMAS BRISTOL**, **MORIAM BALOGAN, CYNTHIA PORTER, CARLA JO RUBY, BRIAN GAITHER,** and **WILLIAM BELHAM,** in their individual capacities,

Defendants.

Case No. 3:26-cv-00445

**COMPLAINT**
8th and 14th Amendments to the United States Constitution; 42 U.S.C. § 1983; Negligence

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.

This is a Civil Rights action regarding Defendants' deliberate indifference to Plaintiff Forge Mileham Jr.'s serious medical needs and failure to protect him from sexual harassment and retaliation by staff while incarcerated in the Oregon Department of Corrections.

Plaintiff suffers from poorly-controlled hypertension, undifferentiated hematuria, chronic abdominal pain, recurrent cystitis, and colonic diverticula, dyslipidemia, aortic atherosclerosis, major depression, and post-traumatic stress disorder arising from repeated sexual harassment and humiliation by Defendant's staff.

Throughout Plaintiff's incarceration, Defendants have knowingly refused to provide medically necessary treatment for his serious medical and mental health conditions, causing years of unnecessary chronic pain, nerve injury, and now likely permanent nerve damage that profoundly impacts his quality of life by severely limiting his ability to engage in ordinary life activities free of pain and impairment.

Defendant's conduct in allowing Plaintiff to be sexually harassed by Defendants and retaliated against for reporting harassment has caused him ongoing psychological suffering and heightened vulnerability to attack. Plaintiff was threatened with retaliation by Defendants for reporting the misconduct, and subsequently held in disciplinary segregation for his alleged safety for 66 days, where he was deprived use of a phone for weeks and held in inhumane conditions.

Plaintiff brings this action under the 8th and 14th Amendments to the United States Constitution through 42 U.S.C. § 1983, and Oregon law including negligence.

**JURISDICTION & VENUE**

2.

This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. 1983 and 12101 et seq., and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), and over Plaintiff's state claims through supplemental jurisdiction, 28 U.S.C. § 1367. U.S.C. 1983 and 12101 et seq., and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), and over Plaintiff's state law claims which are so closely related to his federal claims they form part of the same case or controversy under Article III of the United States Constitution.

Venue is proper in this Court pursuant to the Federal Rules of Civil Procedure, the Local Rules of the District of Oregon, and the statutes governing federal judicial procedure 28 U.S.C. §§ 1391, 1404 and 1406 because at least one central Defendant resides in this district.

**PARTIES**

3.

Plaintiff Forge Mileham, Jr. is currently incarcerated at Oregon State Correctional Institution ("OSCI") in Salem, Oregon, beginning October 27, 2022, where unlawful acts including deliberate indifference to his serious medical needs that form the basis of this complaint occurred. Prior to OSCI, Plaintiff was incarcerated at Oregon State Penitentiary ("OSP") from April 16, 2015 to October 27, 2022, where unlawful acts including sexual

harassment and deliberate indifference to his serious medical needs that form the basis of this complaint also occurred. Plaintiff is a resident and citizen of the State of Oregon at all times relevant to the events and actions set forth in this complaint.

4.

Defendant Oregon Department of Corrections ("ODOC") is the Oregon state agency charged with incarcerating adults who are sentenced to more than one year in prison. ODOC runs 12 prisons across Oregon, including Oregon State Penitentiary and Oregon State Correctional Institution.

5.

Defendant Michael Reese ("Reese") has been the Director of ODOC since November 2023. He bears ultimate responsibility for all aspects of ODOC operations, including the provision of adequate medical care for each inmate incarcerated in ODOC facilities. Reese oversaw a prison medical delivery system that deprived Plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. At all times relevant this Defendant acted under color of law. On information and belief, this Defendant is a citizen and resident of the State of Oregon. He is sued in his personal capacity.

6.

Defendant Collette Peters ("Supt. Peters") was the Director of ODOC from 2012 to July 2022. She bore ultimate responsibility for all aspects of ODOC operations, including the provision of adequate medical care for each inmate incarcerated in ODOC facilities.

Peters oversaw a prison medical delivery system that deprived plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. Peters also oversaw a prison system required to protect the safety and well-being of prisoners, and to prevent sexual harassment and abuse by staff against prisoners. At all times relevant this Defendant acted under color of law. On information and belief, this Defendant is a citizen and resident of the State of Oregon. She is sued in her personal capacity.

7.

Defendant Joe Bugher ("Bugher") was the Assistant Director of ODOC Health Services until his termination in February 2025, at the times relevant to claims in this Complaint. As such, he is responsible for implementing, running, and maintaining an adequate healthcare system for all inmates incarcerated in ODOC facilities, including the provision of adequate medical care for each of them. Bugher oversaw a prison medical delivery system that deprived Plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant this Defendant acted under color of law. He is sued in his personal capacity.

8.

Defendant Joshua Highberger ("Supt. Highberger") was Superintendent of OSCI at times relevant to claims in this Complaint that occurred from October 27, 2022 to date. He was responsible for ensuring that ODOC complied with the requirements of the

United States Constitution and federal and state law, yet oversaw a prison medical delivery system that deprived Plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. On information and belief, this Defendant is a citizen and resident of the State of Oregon. Supt. Highberger undertook the actions alleged herein under color of state law. He is sued in his personal capacity.

9.

Defendant Brandon Kelly ("Supt. Kelly") was Superintendent of OSP at times relevant to claims in this Complaint that occurred between August 19, 2008 to January 11, 2022. Supt. Kelly was responsible for ensuring that ODOC complied with the requirements of the United States Constitution and federal and state law, yet oversaw a prison medical delivery system that deprived Plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. Supt. Kelly oversaw a prison system and staff that subjected Plaintiff to extensive sexual harassment and abuse in front of other prisoners, causing increased vulnerability to attack and psychological harm. On information and belief, this Defendant is a citizen and resident of the State of Oregon. Supt. Kelly undertook the actions alleged herein under color of state law. He is sued in his personal capacity.

10.

Defendant Corey ("Supt. Fhuere") was the Superintendent of OSP at times relevant to claims in this Complaint that occurred from around January 2022 to Plaintiff's transfer to OSCI in October 2022. Supt. Fhuere was responsible for ensuring that ODOC complied

with the requirements of the United States Constitution and federal and state law, yet oversaw a prison medical delivery system that deprived Plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. Supt. Fhuere also oversaw a prison system and staff that subjected Plaintiff to public, extensive sexual harassment and abuse, in front of other prisoners, causing increased vulnerability to attack and psychological harm. Supt. Fhuere also was responsible for ensuring both he and prison staff did not abuse or misuse segregation and maintained humane conditions in segregation environments. On information and belief, this Defendant is a citizen and resident of the State of Oregon. Supt. Fhuere undertook the actions alleged herein under color of state law. He is sued in his personal capacity.

11.

Defendant Jamie Breyman ("Asst. Supt. Breyman") was Assistant Superintendent of OSP at times relevant to claims in this Complaint in 2022. She was responsible for ensuring that ODOC complied with the requirements of the United States Constitution and federal and state law, yet oversaw a prison medical delivery system that deprived Plaintiff of medically necessary care for his serious medical conditions, subjecting him to deliberate indifference. Asst. Supt. Breyman oversaw a prison system and staff that subjected Plaintiff to extensive sexual harassment and verbal abuse by staff in front of other prisoners, causing him heightened vulnerability to attack and psychological harm. Asst. Supt. Breyman was also responsible for ensuring the use of segregation was not abused or used excessively as occurred under her tenure for Plaintiff. On information and

belief, this defendant is a citizen and resident of the State of Oregon. Asst. Supt. Breyman undertook the actions alleged herein under color of state law. She is sued in her personal capacity.

12.

Defendant Warren Roberts ("Dr. Roberts"), a physician, was the former Chief of Medicine of ODOC from 2020 until his termination in February 2025. Dr. Roberts had supervisory authority over medical staff at ODOC, who were responsible for the delivery and quality of health care in the prison system at the time of the acts described in this Complaint. Dr. Roberts caused Plaintiff to be deprived of medically necessary care at times relevant to this Complaint. Dr. Roberts is a board-certified medical doctor and understands the risks and dangers of failing to provide adequate care to a patient with serious medical conditions, like Plaintiff. Dr. Roberts had supervisory authority over Defendants and was aware of Plaintiff's serious medical conditions and the fact that he was not receiving adequate treatment for those conditions. In a continuing act of deliberate indifference, Dr. Roberts failed to cause the steps necessary to correct that deprivation, subjecting plaintiff to cruel and unusual punishment. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, he was acting within the scope of his supervisory agency or employment, and under color of state law. He is sued in his personal capacity.

13.

Defendant Thomas Bristol ("Dr. Bristol"), a physician, was Plaintiff's physician and deprived him of medically necessary care at the time of the acts described in this complaint during Plaintiff's incarceration at OSCI. Dr. Bristol is a board-certified physician and understands the risks and dangers of failing to provide adequate care to a patient with serious medical conditions as suffered by Plaintiff. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, he was acting within the scope of his agency or employment, and under color of state law. He is sued in his personal capacity.

14.

Defendant Moriam Balogun ("RN Balogun") is a nurse practitioner employed by ODOC. RN Balogun was Plaintiff's main healthcare provider at OSCI at all times relevant to this complaint who deprived him of medically necessary care. As a board-certified nurse, RN Balogun understands the risks and dangers of failing to provide adequate care to a patient with Plaintiff's serious medical conditions. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, she was acting within the scope of her agency or employment, and under color of state law. She is sued in her personal capacity.

15.

Defendant Cynthia Porter ("Porter"), was the OSP PREA compliance manager who oversaw plaintiff's Prison Rape Elimination Act investigation. As the PREA compliance

manager at OSP, Porter understood the risks and dangers of failing to follow PREA standards, including the need to protect PREA complainants from retaliation. Porter's investigation was biased and inadequate and did not meet ODOC or PREA requirements. Porter failed to even interview Plaintiff as complainant in the investigation. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, she was acting within the scope of her agency or employment, and under color of state law. She is sued in her personal capacity.

16.

Defendant Ericka Sage ("Sage"), is the ODOC Agency PREA Coordinator who reviews all PREA investigations, including Plaintiff's. As the statewide ODOC Agency PREA Coordinator, Sage understood the risks and dangers of failing to follow PREA standards and to protect PREA complainants. Sage was responsible for ensuring that ODOC complied with the requirements of the United States Constitution and federal and state law, including PREA. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, she was acting within the scope of her agency or employment, and under color of state law. She is sued in her personal capacity.

17.

Defendant Carla Jo Ruby ("Ruby") is a correctional officer employed by ODOC. While Plaintiff was at OSP, Ruby subjected him to relentless sexual harassment while supervising him and other prisoners in the prison industry the Hobby Shop. When

Plaintiff and other prisoners complained about her conduct, Ruby began a campaign of intimidation and retaliation against Plaintiff. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, she was acting within the scope of her agency or employment, and under color of state law. She is sued in her personal capacity.

18.

Defendant Brian Gaither ("Gaither") is a correctional captain employed by ODOC. He performed the PREA investigation while Plaintiff was at OSP, as overseen by PREA compliance manager Defendant Porter. Gaither performed an inadequate and biased investigation in which he failed to even interview Plaintiff or known witnesses who would have corroborated Plaintiff's reports. On information and belief, this Defendant is a citizen and resident of the State of Oregon. At all times relevant, he was acting within the scope of his agency or employment, and under color of state law. He is sued in his personal capacity.

19.

Defendant William Bellman ("Bellman") is a correctional captain employed by ODOC. Bellman ran the Hobby Shop at OSP during the time period at issue in this Complaint. He was the subject of complaints for retaliation and intimidation filed by Plaintiff and other aggrieved prisoners working at the Hobby Shop in the summer of 2022. On information and belief, this Defendant is a citizen and resident of the State of Oregon.

At all times relevant, he was acting within the scope of his agency or employment, and under color of state law. He is sued in his personal capacity.

## FACTS

***Medical Conditions: Hematuria***

20.

Plaintiff began reporting abnormal urinary symptoms to Defendant beginning 2011. Early symptoms included bloating and abnormal urination. By 2017, Plaintiff reported additional concerning symptoms, including genital pain, blood in his urine, cramps in his lower stomach and back, frequent urination with eventual incontinence, bloating, and discomfort with palpitation.

21.

Defendant ignored Plaintiff's reports of urinary dysfunction and pain. In October 2017, Plaintiff was hospitalized with blood in his urine after suffering for days with acute abdominal pain. At the hospital, following a urinalysis, bloodwork labs and an abdomen CT scan, Plaintiff was diagnosed with gastroenteritis, colonic diverticula, and scattered aortic atherosclerosis.

22.

Upon Plaintiff's return to custody following his hospitalization, Plaintiff continued to report painful symptoms like abdominal cramping, frequent urination, and burning pain. Defendant documented blood and E. coli in Plaintiff's urine, and prescribed antibiotics. Plaintiff continued to report cramps and abnormal urinary symptoms such as burning, urgency, pain, and urination with abnormal frequency for years to follow.

Defendant did not treat Plaintiff for urinary symptoms after the initial round of antibiotics following Plaintiff's October 2017 hospitalization. Defendant did not refer Plaintiff for specialist evaluation or treatment in spite of clear medical danger.

23.

From 2017 to 2022, Plaintiff continued to report pain, cramping and abnormal urinary symptoms. Despite finding blood in Plaintiff's urine and noting the ongoing urinary and abdominal symptoms in 2022, Defendants Dr. Bristol and RN Balogun failed to provide adequate evaluation or treatment. In July 2022, Plaintiff was hospitalized again for continued untreated urinary symptoms, an infection, and spiking hypertension due to defendant's failure to provide his heart medications for an extended period of time.

24.

In August of 2022 – five years after Plaintiff's first emergency hospitalization and eleven years after he first reported the abnormal urinary symptoms – Defendant approved a consult with a urologist. Plaintiff did not see the urologist for another four months, however, during which time he continued to suffer painful symptoms and observed continued blood in his urine.

25.

Plaintiff filed numerous requests for medical help from Defendants RN Balogun and Dr. Bristol reporting continued blood in his urine for months. By the time Plaintiff saw the urologist in December 2022, blood had been documented in his urine for seven months.

Plaintiff filed grievances for Defendants' failure to send him for the three-month urology follow up recommended by the urologist. Despite chronic symptoms, Plaintiff was not sent to the urologist for follow up evaluation or treatment until October 2023, just before his habeas trial began, and again in March 2024 following a noncompliance hearing.

26.

**Hypertension**

Throughout Plaintiff's incarceration he has demonstrated abnormal to extremely high blood pressure readings. Defendants, including RN Balogun and Dr. Bristol, have had ample evidence of Plaintiff's dangerously high blood pressure readings, but failed to adequately treat it.

27.

As noted *supra*, Plaintiff was hospitalized in October 2017 on an emergency basis with blood in his urine and several days of acute pain. Hospital staff diagnosed Plaintiff with gastroenteritis, colonic diverticula, and scattered aortic atherosclerosis.

28.

In July 2022, Plaintiff was hospitalized again for untreated urinary symptoms, an infection, and spiking hypertension due to Defendant's failure to provide his heart medications for approximately five months. Defendants inexplicably withheld efficacious blood pressure medication for weeks to months, which still occurs to date. Medical providers at both OSP and OSCI have repeatedly withheld prescribed, efficacious blood pressure medication, making Plaintiff more vulnerable to a lethal event. Defendants Dr.

Bristol and RN Balogun withheld medically necessary medication as recently as two months ago at OSCI.

29.

Defendants Dr. Bristol and RN Balogun deprived Plaintiff of adequate monitoring, evaluation or treatment for hypertension at OSCI. In a continuing act of deliberate indifference, Defendants failed to take the steps necessary to correct that deprivation, and denied him medically necessary care. Defendants' conduct has caused Plaintiff's repeated emergency hospitalizations and has likely caused permanent damage, making him more vulnerable to a lethal cardiac event.

30.

Plaintiff's untreated medical conditions caused him physical deterioration and suffering, resulting in permanent damage that impacts his daily living activities including the ability to work or to maintain quality of life.

31.

As Chief of ODOC Medicine, Defendant Dr. Roberts had supervisory authority and is responsible for creating and allowing ODOC's substandard, dangerous medical program that threatened Plaintiff's life.

32.

As Assistant Director of ODOC Health Services, Defendant Bugher had supervisory authority over the agency's health delivery system, and is responsible for creating and allowing ODOC's substandard, dangerous medical program that threatened Plaintiff's life.

33.

In around 2024, ODOC contracted two investigations regarding retaliation by Defendants Dr. Roberts and Bugher against whistle blowers who reported harmful medical practices directed or performed by Defendants. The subsequent reports produced in 2025 by Falcon Group, and 2024 by Workplace Solutions Northwest contained major findings of malfeasance, retaliation against whistle-blowers and overall ineptitude by Defendants Roberts and Bugher. Defendants Dr. Roberts and Bugher were terminated by ODOC in January 2025.

34.

ODOC has publicly admitted to the widespread deficiencies of its medical care delivery system largely due to the malfeasance of Dr. Roberts and Bugher, as detailed in the investigations. Plaintiff's claims fall under the time period of Defendants Dr. Roberts and Bugher's authority, and mirror many of the conclusions of the investigative reports against Defendants Dr. Roberts and Bugher that ODOC has admitted to be true.

35.

**Sexual Harassment and Retaliation by ODOC staff**

Plaintiff began working in OSP's prison industry the Hobby Shop in 2019. The Hobby Shop was a prison work program where prisoners paid fees and purchased their own equipment and supplies to make arts and crafts, including leather goods purchased by staff members and others. The Hobby Shop is the most lucrative prison work program in the state.

36.

In 2022, Defendants Ruby and Bellman oversaw the Hobby Shop. Ruby sexually harassed Plaintiff relentlessly. Ruby and Bellman threatened to punish Plaintiff if he reported the sexual harassment. In around April through May 2022, Plaintiff and his co-complainant, R.S., filed sexual harassment and retaliation complaints against Ruby and Bellman with the Department of Public Safety Standards and Training (DPSST) and the Inspector General ("IG"). In around July 2022, Plaintiff submitted prison grievances against Ruby for sexual harassment under PREA, threats and emotional abuse. On around September 2022, Plaintiff made another Prison Rape Elimination Act ("PREA") complaint, in addition to an earlier PREA complaint filed by Plaintiff's co-complainant R.S. in April 2022.

37.

The PREA complaint filed by Plaintiff and co-complainant R.S. included 10 specific instances of sexual harassment by Ruby against Plaintiff and another prisoner, including calling plaintiff "Princess", or "Tinkerbelle," and "Mariposa" (Spanish-language slur for gay man). Ruby left a card with a "pop-up" penis on Plaintiff's bench at the Hobby Shop. On another occasion, she draped a banner by Plaintiff's bench that said "Princess". Ruby told Plaintiff: "I don't have problem spitting up your babies on the yard." She showed Plaintiff a pepperoni stick and said, "This must be what you white guys are like," in front of the rest of the work room, and indicated she needed something bigger. Ruby showed prisoners in

the Hobby Shop pictures of her ex-husband in a dress, saying she was "proud she turned him into a transgender."

38.

Upon learning of the complaints filed first in around April 2022, Defendants Ruby and Bellman threatened Plaintiff that he would lose his bench in the Hobby Shop and everything he had invested if he reported them. In February 2022, Ruby announced in the Hobby Shop that anyone who complained against her would be removed from the shop by Bellman, and that she would make sure they were shipped out of state. The Hobby Shop was shut down for a PREA investigation conducted by Defendants Porter and Gaither in the spring of 2022.

39.

During the PREA investigation, Plaintiff was completely unprotected in general population for months – contrary to PREA Rules 115.67 and 115.43 that require protection from retaliation for complainants. While in general population, Plaintiff's TV was violently smashed by another prisoner, who also smashed the TV of Plaintiff's co-complainant R.S. The offender was disciplined briefly then sent back to general population, without any warning to Plaintiff.

40.

On August 23, 2022, four months after the closure of the Hobby Shop resulting from Plaintiff's and co-complainant's reports, Defendant Bellman moved them from general population to administrative and then disciplinary segregation for 66 days.

Defendant Bellman claimed Plaintiff needed to be protected from potential prisoner assaults in retaliation after the Hobby Shop was shut down 2022 due to the PREA investigation. Defendant Supt. Fhuere approved the segregation placement on September 26, 2022 for 30 days or until transfer to another institution. Plaintiff remained in involuntary segregation for a total of 66 days, without a hearing, and was subjected to unlawful restrictions – including not allowing Plaintiff to use the phone – for weeks.

41.

While in segregation, Plaintiff was subjected to the severe, punitive restrictions of disciplinary segregation: he could not see family, have property, exercise or engage in programming. ODOC staff subjected Plaintiff to additional, unlawful restrictions: he was prohibited from using the phones for weeks. Plaintiff could not call the PREA hotline, the Inspector General's hotline, or attorneys. Plaintiff asked his family to reach the ODOC PREA coordinator Defendant Sage, the Agency PREA Coordinator, for help. Sage never responded to their inquiries.

42.

When Plaintiff was finally allowed access to the phones, he and co-complainant R.S. contacted the IG and PREA hotlines with 27 PREA violations, and reported obstruction by Defendants to access the phone. The complaints reached Defendant Supt. Fhuere and were assigned to an IG attorney for review. The subsequent investigation focused only on the lack of access to phones in segregation, but not the 27 PREA

complaints. Defendant Porter directed Plaintiff and co-complainant R.S. not to contact the IG further.

43.

PREA forbids excessive use of disciplinary segregation for complainants regardless of determination of merit of claim per PREA Rule 115.43 (a-e). In so doing, Plaintiff was deprived of his right to due process and a hearing which must occur before 30 days expire following placement, per ODOC policy.

44.

Pursuant to the PREA investigation, Defendant Ruby admitted calling Plaintiff "Tinkerbelle" several times in front of everyone at the Hobby Shop. She denied the other allegations. Despite multiple available corroborating witnesses, and Ruby's own admission to conduct constituting sexual harassment under PREA Rule 115.6, defendants Porter and Gaither concluded the PREA complaint was unsubstantiated on around August 29, 2022. ODOC PREA coordinator Defendant Ericka Sage endorsed Porter and Gaither's conclusion and closed the case in late August 2022. Plaintiff was transferred to OSCI shortly afterwards, on October 27, 2022. Plaintiff was never interviewed for the PREA investigation initiated.

45.

In February 2024, Defendant OSP Asst. Superintendent Jamie Breyman endorsed Defendant's handling of the April 2022 DPSST complaint lodged while Plaintiff was at OSP that reported Ruby and Bellman's sexual harassment and retaliation. Defendant

Breyman's endorsement ignored ODOC's failure to even interview Plaintiff, a required basic in such investigations.

46.

**PTSD**

Since the sexual harassment, intimidation and retaliation by Defendants, Plaintiff has been diagnosed with post-traumatic stress disorder (PTSD). He experiences the hallmark symptoms of PTSD, including difficulty sleeping, hypervigilance, paranoia and extreme anxiety. He stays mostly in his cell as much as possible to avoid contact with people. His medical conditions are necessarily impacted by his psychological deterioration, his quality of life significantly diminished. Plaintiff's requests for PTSD treatment made regularly since the harassment and abuse at OSP by Defendants Ruby and Bellman have gone untreated.

47.

**Plaintiff's Habeas Corpus Case**

Plaintiff filed a habeas corpus case in 2023, in *Forge Mileham, Jr., v. Joshua Highberger,* case no. 23CV01690. Plaintiff raised claims under the 8th Amendment to the United States Constitution and Article I, § 16 of the Oregon Constitution asserting deliberate indifference to his serious medical and psychological claims. The case was bifurcated, with trial on the medical claims October 24-26, 2023, and the mental health and PREA claims on December 13, 2023, May 16, 2024, Feb 12, 2025, and May 29-30, 2025.

48.

Following a trial on the medical claims, the Trial Court concluded Defendant ODOC subjected Plaintiff to deliberate indifference to his serious medical conditions of hypertension and hematuria (First and Third Claims for Relief). While the Court also found Plaintiff's untreated plantar fasciitis and heel spur claims problematic, the Court concluded Defendant's attestation that it would provide treatment in the future resolved the claim. The Court made subsequent orders for medical injunctive relief for the hypertension and hematuria claims.

The parties came before the Court for a noncompliance hearing resulting in orders for Defendant to schedule cardiology and urology appointments on March 8, 2024.

Following the trial on the PREA claims, the Court concluded Defendant Ruby sexually harassed plaintiff but declined to find Defendant in violation of constitutional protections, by General Judgment issued August 18, 2025.

**<u>First Claim for Relief</u>**
**United States Constitution, 8th Amendment**
**42 U.S.C. § 1983**
**Against Reese, Peters, Bugher, Roberts, Highberger, Kelly, Fhuere, Breyman, Bristol, Balogun Defendants**

Plaintiff re-alleges 1-48 as though fully restated herein.

49.

The 8th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, guarantees Plaintiff's right to be free from cruel and unusual punishment while incarcerated. Under the 8th Amendment, prison officials have a duty to provide

medically necessary treatment and not act with deliberate indifference to prisoners' serious medical conditions.

50.

Defendants knew that Plaintiff faced a substantial risk of harm, including but not limited to serious medical conditions including hematuria and hypertension, and disregarded that risk by failing to provide Plaintiff with medically necessary evaluation and treatment in the following ways:

(a) Failing to provide timely medical evaluation or treatment for medical conditions including hematuria and hypertension despite ample reports of abnormal and painful symptoms and other evidence of medical problems beginning in 2011;

(b) Causing Plaintiff's medical conditions to progressively worsen due to lack of medically necessary care, causing repeated emergency hospitalizations between 2017 and 2022;

(c) Repeatedly failing to regularly provide medication prescribed for Plaintiff's hypertension, causing him to go without life-saving medication for up to five months at a time;

(d) Withholding adequate treatment over such a long period of time his hypertension symptoms have progressively worsened;

(e) Failing to monitor Plaintiff's hypertension despite continued symptoms;

(f) Continuing to withhold adequate medical care for Plaintiff's conditions even after being court-ordered to do so with a finding of deliberate indifference and unconstitutionality of medical care;

(g) Knowing of but failing to comply with constitutional requirements to provide medically necessary care to those in Defendant's charge; and

(h) Acquiescing in and/or approving the above acts.

51.

The above-described actions constitute deliberate indifference to Plaintiff's health and well-being and constitutional rights.

52.

Defendant took the above-described actions under color of state law.

53.

As a result of the Defendant's unlawful acts, Plaintiff suffered damages in an amount to be determined by a jury at trial. The damages include but are not limited to: physical suffering, progressive health and psychological deterioration, pain and suffering, emotional injury.

54.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

55.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Second Claim for Relief**
**United States Constitution, 14th Amendment**
**42 U.S.C. § 1983**
**Against Reese, Peters, Ruby, Gaither, Bellham,**
**Porter, Sage, Fhuere, Kelly, Breyman Defendants**

Plaintiff re-alleges paragraphs 1-48 as though fully restated herein.

56.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. §1983, enshrines Plaintiff's right to be free from government discrimination based on sex that is not supported by an exceedingly persuasive justification.

57.

Defendants acted with deliberate indifference to Plaintiff's rights under the 14th Amendment when they took the following actions:

a. Defendant sexually harassed Plaintiff relentlessly in view of dozens of other prisoners, by calling Plaintiff names like "Princess," or "Tinkerbelle," and "Mariposa"; leaving cards with hand drawn genitals on Plaintiff's bench; hanging a banner with "Princess" written on it in his work station; making crude remarks to Plaintiff about penis size, oral sex and semen in front of dozens of other prisoners;

b. Defendant's sexual harassment made Plaintiff more vulnerable to assault and sexual harassment by other prisoners and/or staff;

c. Threatening to retaliate against Plaintiff if he reported the sexual harassment;

d. Causing Plaintiff to be held in extensive, retaliatory disciplinary segregation after making reports against Defendants;

e. Not permitting Plaintiff to use a phone while in disciplinary segregation, so he was unable to call his attorney, or lodge complaints with the IG, DPSST or PREA hotlines;

f. Causing Plaintiff to suffer ongoing PTSD as a result of Defendant's unlawful conduct;

g. Refusing to provide treatment for PTSD caused by Defendants' unlawful conduct;

h. Conducting and/or approving a biased, flawed and inadequate PREA investigation that failed to even include an interview with Plaintiff, and failed significantly to follow PREA requirements for such investigations;

i. Given the flawed and biased investigation remains in Plaintiff's ODOC file, it may bias future PREA investigations against Plaintiff; and

j. Acquiescing in and/or approving the above acts.

58.

The above-described actions constitute deliberate indifference to Plaintiff's safety and constitutional rights.

59.

Defendant took the above-described actions under color of state law.

60.

As a result of the Defendant's unlawful acts, Plaintiff suffered damages in an amount to be determined by a jury at trial. The damages include but are not limited to: psychological deterioration, pain and suffering, emotional injury, and permanent physical damage due to withholding of necessary medical care.

61.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

62.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Third Claim for Relief**
**Negligence / Negligence per se**
**Against ODOC**

Plaintiff re-alleges paragraphs 1-49 as though fully restated herein.

63.

Defendant ODOC is vicariously liable for acts and omissions of its agents and employees – including the personal Defendants – occurring in the scope of their agency and employment.

64.

A special relationship existed between ODOC and Plaintiff due to the nature of incarceration. As a ward of the state, ODOC manages all aspects of Plaintiff's health care

and well-being, and decides when a request for a medical appointment or medical care should be granted, or protection from harm – whether by staff or other prisoners.

65.

Had Plaintiff been a free person, he would have sought the appropriate treatment immediately and had some form of treatment and protection rendered. However, as an incarcerated person, when Plaintiff sought treatment while in ODOC's facility his pleas for treatment went unmet. ODOC took custody of Plaintiff under circumstances such as to deprive him of protection from unnecessary physical and psychological deterioration, including by failure to provide adequate medical care and permitting sexual harassment and retaliation against him.

66.

Plaintiff was unable to access adequate medical care and physical and psychological safety while incarcerated. ODOC did not meet its obligation to provide for "healthcare, including medical, dental, mental health care and pharmacy services, that compl[ies] with appropriate professional standards." OAR 291-124-0016(1)(c). Nor did ODOC meet its PREA obligations to receive PREA reports, conduct investigations and investigate complaints without bias.

67.

ODOC and its employees and agents, including the personal defendants, were negligent or negligent per se in one or more of the following ways:

a. By withholding and failing to provide medically and constitutionally adequate treatment for Plaintiff's hypertension, hematuria and PTSD;

b. Failing to train and provide oversight for medical staff and administrators to provide medically necessary treatment in a timely manner, to prevent lifelong damage and deterioration as a consequence;

c. In maintaining unconstitutional conditions of confinement even after ordered by a Court to provide medical treatment. Defendant's conduct has caused Plaintiff extensive, unnecessary pain and suffering with likely permanent damage;

d. Failing to train employees and/or enforce rules, policies, processes or procedures to ensure that prisoners are protected from sexual harassment and retaliation and unbiased investigations follow per the PREA standards;

e. Failing to enforce a zero-tolerance policy towards all misconduct by staff, including sexual harassment against prisoners like Plaintiff; and

f. Knowing of but failing to comply with PREA standards.

68.

Defendants knew or should have known that failing to provide medically and constitutionally adequate treatment for Plaintiff's hypertension, hematuria and PTSD caused by defendant's conduct would result in suffering extreme physical harm, and psychological pain and suffering.

69.

Defendants failed to use reasonable care in providing medical and mental health care to Plaintiff, as alleged above. Defendants' conduct was negligent.

70.

Defendants' conduct was unreasonable in light of the risk of harm to Plaintiff. ODOC controls all aspects of Plaintiff's access to medical and mental health care. Plaintiff's untreated medical conditions of hypertension, hematuria and PTSD caused by Defendant's conduct would have been treated in the community. Instead, ODOC unreasonably disregarded Plaintiff's pleas for medical assistance concerning his serious medical conditions noted.

71.

As a consequence of Defendants' negligence, Plaintiff suffered physical harm and psychological pain and suffering. ODOC's failure to treat his serious medical conditions noted increased his physical and psychological deterioration. He will likely require future treatment as a result of ODOC's negligence, and may suffer long-term physical and psychological deterioration as a result of ODOC's negligence.

72.

Defendants' conduct was a substantial factor in causing harm to Plaintiff.

73.

As a result of Defendants' unlawful conduct, Plaintiff suffered economic and non-economic damages in an amount to be proven at trial. These damages include but are not

limited to: physical injury, pain and suffering, emotional injury, humiliation, and psychological suffering.

WHEREFORE, Plaintiff prays for relief as follows:

a. For judgment in favor of Plaintiff against Defendants;

b. An award of damages in an amount to be established at trial;

c. An award of pre- and post-judgment interest;

d. For reasonable attorneys' fees and costs; and

e. For such other and further relief as may appear just and appropriate.

Respectfully submitted this 6th day of March, 2026.

LAW FIRM OF TARA HERIVEL, LLC

s/ *Tara Herivel*
**Tara Herivel,** OSB #070418
Tara@heriveldefense.com
333 S.W. Taylor Street, Suite 300
Portland, Oregon 97204
Tel: (503) 893-5525
Attorney for Plaintiff Forge Mileham